# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

In re:

LAKEVIEW DEVELOPMENT
CORPORATION,

Debtor.

Bankruptcy Case No. 14-16938 EEB
Chapter 11

### ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO CONVERT

THIS MATTER came before the Court for trial on the Motion to Convert Chapter 11 Case to Case Under Chapter 7 Pursuant to 11 U.S.C. § 1112(b) and for Dissolution [of the] Official Unsecured Creditors' Committee ("Motion to Convert"), filed by the United States Trustee (the "UST"), and the Objection filed by David Summers ("Mr. Summers"), an unsecured creditor who is also the Debtor's president.  Although this Court has taken over the case rather late in the game,[1] the clear picture that emerged from the hearing on this matter was Mr. Summers' unwillingness to let go of the project that has been the center of his life for ten years, despite overwhelming evidence that it is no longer feasible.

## I.   BACKGROUND AND RELEVANT FACTS

The Debtor owns and had begun development of a residential real estate project on 152 acres in Loveland, Colorado.  Only some initial infrastructure and platting work occurred before this project ran into financial difficulties.  In response, the Debtor filed chapter 11 nearly two years ago.  After more than one year in chapter 11, the Court ordered the appointment of a chapter 11 trustee due to the fact that the Debtor had been unable to confirm a plan, little had been accomplished other than delay caused by disputes between the Debtor and its creditors, there were extraordinarily high administrative expenses, the Debtor had no source of revenue other than borrowing, and the Debtor had failed to pursue potential avoidance claims against Mr. Summers.  The Court approved the UST's selection of Joli Lofstedt as chapter 11 trustee (the "Trustee") on June 23, 2015.  About four months later, on October 30, 2015, the Court granted relief from the automatic stay to foreclose on the entire project to the Debtor's primary secured creditors, Baltz Family Limited Partners, Ltd. and Pioneer Investments & Holdings LLC (together "Baltz").

The UST asserts that Baltz would have to consent to any proposed plan of reorganization and that it is unwilling to do so.  As such, the UST alleges that there is no longer any realistic possibility for reorganization of the Debtor, and that allowing the case to languish in chapter 11 serves no purpose and is causing the estate to incur unnecessary expense.  Mr. Summers argues

---

[1] On the retirement of the Hon. Sidney B. Brooks on January 3, 2016, this case was reassigned to Judge Elizabeth E. Brown.

that conversion to chapter 7 is "premature," until new owners purchase the property from Baltz. He asserts that the Debtor owns certain specialized equipment, intellectual property, documents, and information that are not subject to Baltz' liens, and that once the new owners are known, the Debtor will be in a better position to negotiate for a bulk sale of these remaining assets. He argues that if the Debtor stays in chapter 11 as a "dormant but functioning business entity," it will have a better chance to maintain a positive working relationship with the Lakeview Metropolitan District (the "District") and a better chance to recover its claim of in excess of $6 million against District. Finally, he maintains that the estate's expenses for remaining in chapter 11 are minimal.

The only two witnesses to testify at the hearing were the Trustee and Staci Wetzler, a member of the unsecured creditors' committee. Mr. Summers, who is a licensed Colorado attorney, represented himself but elected not to testify. His evidence consisted only of the testimony of the Trustee and Ms. Wetzler and several documents from past proceedings in this case, including previous plans proposed by the Debtor and the Trustee.

Ms. Wetzler's testimony revealed little other than a level of animosity between herself and Mr. Summers and the existence of rumors concerning a possible sale of the property by Baltz. Her testimony was brief and provided no information relevant to any issues currently before the Court.

The Trustee testified credibly concerning her efforts at reorganization and the current status of the estate. She stated that, upon being appointed Trustee, she immediately began working on and quickly filed a plan of reorganization, which provided for the continued development of the property and sale of lots. Her plan was filed prior to Baltz being granted relief from stay. The Trustee testified that, since relief from stay has been granted to Baltz, any plan providing for the continued development of the project is no longer an option unless Baltz consents to the treatment of its claim. She stated that, both before and after Baltz was granted relief from stay, she has tried to negotiate a consensual plan with Baltz but there has been no progress in these negotiations.

She described the current assets of the estate other than the real property subject to Baltz' lien. There is $28,000 in cash in the estate's bank account, some equipment and documents of unknown value, three modular office buildings that could be worth up to $6,000 each, a claim for greater than $6 million against the District for infrastructure costs, and avoidance claims of up to $2.3 million against Mr. Summers. The estate may also have a claim against the City of Loveland (the "City") for reimbursement of road expansion expenses. The Trustee did not value the claim against the City. She testified that there is no chance for the estate to recover anything on the claim against the District until homes are built on the property and the District can issue bonds and assess the homeowners to pay the bonds. She believed that the claim against the City may be owed to the District rather than the Debtor, and is probably is not recoverable until all costs of the project, including some for unpaid engineering work, have been paid.

The Trustee has been unable to further investigate or pursue the claims against the City or Mr. Summers because she has been unable to retain counsel. With only $28,000 of cash in the estate, she is unable to hire counsel whose fees would be on the same level of priority as the remaining $700,000 - $800,000 in unpaid chapter 11 administrative expenses. The Trustee's

inability to retain counsel also prevents her from proceeding with a simplified chapter 11 plan that would call for the liquidation of the estate's non-real property assets. The Trustee agreed with Mr. Summers that a bulk sale of the estate's specialized equipment and modular buildings to the future owner of the real property would realize a greater return than an auction sale, but she also believed that a sale to the future owner could be as easily accomplished in a chapter 7 proceeding. The Trustee further testified that the extent of administrative insolvency in this case has prevented her from retaining an accountant, which is necessary to prepare and file payroll and income tax returns.

According to the Trustee, the expenses of maintaining the case in chapter 11 are the UST's fees of $325 per quarter, plus the cost of insurance and utilities. While admittedly these expenses are not exorbitant, especially when compared to the prior level of administrative expenses incurred in the case, they do continue to diminish the assets of the estate, which has no ongoing source of income.

Thus, the estate is currently in a holding pattern. The Trustee has no reasonable prospect for a reorganization plan and, without counsel, is unable to pursue even a liquidating plan or the estate's potentially significant claims against third parties. With respect to the estate's potential avoidance claims, this holding pattern is particularly harmful because the statute of limitations for asserting such claims is fast approaching. Moreover, this holding pattern is likely to continue for an indefinite period of time. It does not appear that Baltz has yet begun the foreclosure process and, when it does, it will likely have to file for a judicial foreclosure, instead of a public trustee foreclosure, due to mechanics lien claims. Thus, Baltz is unlikely to secure a purchaser for the property for quite some time.

## II.   DISCUSSION

### A. Cause for Conversion or Dismissal Exists Under § 1112(b)(1)

Section 1112(b)(1)[2] establishes a two-step process for determining whether dismissal or conversion of a chapter 11 case is appropriate. The Court "first determines whether there is 'cause' to convert or dismiss," and if cause is found, the Court considers whether "conversion or dismissal . . . [is in the] best interest of creditors and the estate." *In re American Capital Equipment, LLC*, 688 F.3d 145, 161 (3rd Cir. 2012). Section 1112(b)(4) provides a nonexhaustive list of grounds upon which a bankruptcy court may dismiss or convert a chapter 11 case for "cause." *In re Frieouf,* 938 F.2d 1099, 1102 (10th Cir. 1991). In addition to the circumstances listed in § 1112(b)(4), courts may find cause for other equitable reasons. *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012). The movant bears the burden of establishing cause by a preponderance of the evidence. *In re ARS Analytical, LLC*, 433 B.R. 848, 861 (Bankr. D.N.M. 2010). If cause is established, § 1112 provides that the Court *shall* convert or dismiss, unless there are "unusual circumstances" that establish that such relief is not in the best interest of creditors and the estate. §§ 1112(b)(1), (b)(2). Once cause is demonstrated, the burden shifts to the opposing party to prove "unusual circumstances." *In re Whetten*, 473 B.R. at 382.

---

[2] This and all other references to "section" or "§" are to Title 11, United States Code.

The UST argues that there is cause for conversion or dismissal under § 1112(b)(4)(A) because of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." The Court agrees. The evidence was overwhelming and uncontroverted that there is no reasonable likelihood of rehabilitation of this Debtor. The Court credits the testimony of the Trustee that she has tried repeatedly to negotiate with Baltz, but has failed to reach agreement on a plan that would allow the Debtor to continue its development. The Court finds that there is no reasonable prospect for such a plan. Even Mr. Summers concedes that a plan that contemplates further development and sale of the real property by the Debtor is not possible. He argues only for a liquidating plan of the Debtor's non-real estate assets or the postponement of conversion for some indefinite period of time.

While the monthly or quarterly expenses of maintaining this case in chapter 11 are not large, they are causing a continuing loss to and diminution of the estate where there is no source of income to pay them. Additionally, the Court finds that the Trustee's inability to investigate or pursue the estate's large claims against the District, the City, and particularly the avoidance claims against Mr. Summers, poses a very significant threat of substantial loss to the estate if the case remains in chapter 11 for even a few more months. The Trustee was appointed on June 23, 2015 and, pursuant to § 546(a), the statute of limitations for avoidance claims will expire on June 23, 2016. Additionally, the estate's inability to hire an accountant to file necessary tax returns threatens the estate with liability for penalties and interest on any taxes ultimately determined to be due.

Even if the Court were to conclude that the expenses of maintaining the case in chapter 11 did not result in continuing loss to and diminution of the estate, the extreme administrative insolvency of this estate and the lack of any source of income, which has rendered the Trustee powerless to pursue any further administration of the estate under chapter 11, is sufficient cause to dismiss or convert this case on equitable grounds not specifically listed in § 1112(b)(4). Without the ability to hire counsel or accountants, the Trustee is unable to accomplish anything of benefit to any party in interest while the case wastes away in chapter 11.

### B. The Unusual Circumstances Exception Under § 1112(b)(2) Does Not Apply

Section 1112(b)(2) of the Code provides a limited exception to the rule of mandatory conversion or dismissal if "cause" is established. This section shifts the burden to the party opposing conversion or dismissal to establish "unusual circumstances" demonstrating that conversion or dismissal is not in the best interests of creditors and the estate. *In re Whetten*, 473 B.R. at 384. The Code does not define "unusual circumstances," but the term contemplates "conditions that are not common in chapter 11 cases." *In re Prods. Int'l Co.*, 395 B.R. 101, 109 (Bankr. D. Ariz. 2008).

In addition to establishing "unusual circumstances," the party opposing conversion or dismissal must satisfy a four-part test by demonstrating that: (1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time, (2) the cause for dismissal or conversion is other than continuing loss or diminution to the estate without reasonable likelihood of rehabilitation, (3) there is a reasonable justification for the act or omission of the debtor constituting cause and (4) the act or omission will be cured within a reasonable time.

4

§ 1112(b)(2)(A) and (B); *In re Whetten*, 473 B.R. at 384 (citing 7 Collier on Bankruptcy ¶ 1112.05[2] (Alan N. Resnick and Henry J. Sommer eds., 16th ed.)).

The Court finds that Mr. Summers failed, on several grounds, to establish that this exception applies. First, the Court finds that he failed to establish the existence of "unusual circumstances." He repeatedly argued that the specialized and unique nature of the Debtor's equipment and intellectual property makes them more valuable when sold in bulk to a potential purchaser rather than piecemeal at an auction. This may very well be true with respect to the equipment, and the Trustee in fact agreed with Mr. Summers on this point. However, he presented no evidence of the current value of these assets, either at bulk sale or auction.[3] No intellectual property is listed or valued as an asset in the Disclosure Statement. Additionally, there is no reason why a bulk sale of the assets cannot be accomplished in a chapter 7 case rather than in chapter 11. The nature of these assets and their value to a purchaser of the real property does not constitute "unusual circumstances," at least not to the extent that it outweighs the harm to creditors that will result from leaving the case in chapter 11 with a Trustee that is unable to administer the avoidance and other claims of the estate, which have potentially much greater value for creditors.

Mr. Summers also argued that maintaining the Debtor in chapter 11 as a "dormant but functioning business entity," would allow it to maintain a positive working relationship with the District and give it a better chance to recover its claim against the District. But again, he totally failed to present any evidence of why this would be so, and the Court is unable to discern the basis for this contention. This amorphous argument fails to constitute "unusual circumstances."

However, even if "unusual circumstances" had been established, Mr. Summers failed to meet two of the four parts of the test, found in § 1112(b)(2)(A) and (B). He did not establish that there is a reasonable likelihood that a plan will be confirmed within a reasonable time, and the "cause" for dismissal or conversion is substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, not something that may be readily cured.

### C. Conversion is in Creditors' Best Interests

Having found "cause" under § 1112(b)(1) and (b)(4)(A), and that the unusual circumstances exception of § 1112(b)(2) does not apply, the Court next turns to the appropriate remedy. It finds that conversion, rather than dismissal, is clearly in the best interests of creditors and the estate. Conversion to chapter 7 will allow the estate to retain an attorney and accountant whose fees will be accorded higher priority than the unpaid chapter 11 administrative expenses. Once counsel is retained, the estate will be able to investigate and pursue the significant avoidance and other claims it has against third parties. A chapter 7 trustee will have the option to wait until the new owner of the property is known and to negotiate a bulk sale of the equipment and modular buildings with the new owner. Though it may be some time before the estate can recover on its claim against the District, the case could be administratively closed,

---

[3] The Disclosure Statement filed by the Debtor's board of directors on July 17, 2015 reflects that the scheduled value of unencumbered machinery and equipment, furniture, fixtures, and signage was $24,575. No intellectual property is mentioned in the Disclosure Statement. Some of the intellectual property may also, to some extent, be subject to a statutory lien of the engineers, who have yet to be paid in full for their work on this project.

without abandonment of this asset and reopened at such time as the District is able to issue bonds and repay its debt.

If the case is dismissed, any possibility for a chapter 7 trustee to utilize the Code's avoidance powers to obtain some return for and an equitable distribution between creditors will be lost. These avoidance claims, which could amount to between $150,000 and $2.3 million, represent the greatest chance for a prompt recovery of some value from this estate.

Although in his argument, Mr. Summers vaguely referred to the maintenance of the Debtor as an "operating entity," as having some positive effect on the estate's ability to recover on the claim against the District, neither party presented any evidence concerning what would happen to the Debtor's claims against the District in the event the case is dismissed, so the Court cannot find that dismissal would give the Debtor a greater chance for recovery against the District, or that any such recovery would be equitably distributed. All told, the Court finds no benefit to dismissal of this case compared with conversion to chapter 7.

### III. CONCLUSION

In his opening statement Mr. Summers stated that, "the Debtor was intricately tied for a decade to my life, my financial future, and my career." In his view, he is the only one who has not completely given up on the project. He argues, somewhat desperately, for the Court to delay making the decision on conversion for some unstated period of time. He presented no evidence, however, that more delay in this case will accomplish anything of benefit to creditors or the estate. Unfortunately, the reality is that Mr. Summers is much too personally invested in the Debtor to let it go and see it finally come to an end in chapter 7. It is time for all involved to accept that the chapter 11 process is no longer a viable means to rehabilitate the Debtor, and that the best interest of creditors and the estate would be served by immediate conversion of this case to chapter 7. Moreover, the potential avoidance claims against Mr. Summers will be lost in a few months if this case is not converted.

Based on the foregoing, it is hereby

ORDERED that the United States Trustee's Motion to Convert is GRANTED. It is

FURTHER ORDERED that this case is converted to chapter 7. It is

FURTHER ORDERED that the unsecured creditors' committee is dissolved.

Dated this 11th day of April, 2016.

BY THE COURT:

*Elizabeth E. Brown*
Elizabeth E. Brown, Bankruptcy Judge

6